USDC Appeal No. 2:17-CV-04157-RGK

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

In re The Woman's Club of Hollywood, California
Debtor

## Jennifer Morgan, Appellant
v.
## Heide Kurtz, Appellee

_____

Appeal from the United States Bankruptcy Court
Appeal from a Final Judgment
Bankruptcy Adversary Case No. 2:13-ap-01854-BR

# APPELLANT'S OPENING BRIEF

**Hubbard Law Firm**
**David F. Hubbard, Esq.**
**Bar No. 165708**
**3890 11th. Street, Suite 214**
**Riverside, CA 92501**
**Phone: (951) 686-2660**
**Email: HubbardLawFirm@gmail.com**

**Attorney for Appellant, Jennifer Morgan**

## TABLE OF CONTENTS

I. Statement of Jurisdiction                                          1

II. Standard of review                                               1

III. Statement of Issues                                            2

IV. Statement of the case                                           3

V. Summary of the argument                                          6

VI.   Plaintiff Heide Kurtz did not testify at trial and            7

presented no evidence of her identity, much less her standing.

She was a phantom plaintiff. It was error to enter a judgment in

her favor.

     1. Relevant case law on standing.                          5

     2. Kurtz failed to prove who she was and thus did not show   1 0

injury   in fact to herself or invasion of a legally-protected interest.

VII.  Judicial admissions in the pleadings are binding.             1 6

VIII. The FAC made the judicial admission that morgan had an        1 8

employment contract.   It was error for the court to find

that morgan had no contract, for the admission of the FAC was conclusive.

IX. The court inconsistently found that Morgan had no contract to   2 2

be paid, while at the same time finding that she could be

i

paid  out of "money coming in," but not from a
 loan. This inconsistency is clearly erroneous, and de novo
review  is  warranted.

1. There was no extrinsic evidence that the Resolution     24
 precluded payment to Morgan out of a loan, but only out permitted
payment  out  of  money  "coming  in."

X. Kurtz failed  to  prove  that  Morgan  received  more  than  she     29
had  earned  under  the  contract.

1. It is not a defense to an employee's suit for wages that     32
an  employer  cannot  afford  to  pay  the  wages  due.

2. It is irrelevant whether the Board approved Morgan's     33
 $100,000  trust  deed  or  not,  since  Kurtz  failed  to  prove  that
Morgan  was  owed  any  less  than  $100,000.

XI. The court implicitly found that the board defrauded Morgan but     36
paradoxically  found  Morgan  liable  for  breach  of  fiduciary  duty.

1.  Getting  paid  salary  is  not  a  breach  of  fiduciary  duty.     39

XII. Morgan  had  to  return  $20,000  of  the  $120,016,  and     40
the  judgment  was  erroneous  as  to  that  amount.

XIII.  The court erred in finding that Morgan  converted $6,400.     40

Conclusion     44

## TABLE OF AUTHORITIES

ACLU-NJ v. Township of Wall ACLU-NJ  246 F.3d 258                7
    (3rd Cir. 2001)

Brinker Restaurant Corp. v. Superior Court (2012) 53 Cal.4th       28
    1004

Carter v. HealthPort Technologies, LLC  822 F.3d 47         1, 9, 10
    (2nd Cir. 2016)

Doe v. Tangipahoa Parish School Bd.  494 F.3d 494                8
    (5th Cir. 2007)

Dr. Leevil, LLC v. Westlake Health Care Center (2017)            26
    Cal.App.5th 450

Fletcher v. Davis (2003)106 Cal.App.4th 398                     41

Florida Department of Ins. V Chase Bank of Texas Nat'l Ass'n     9
    274 F.3d 924 5th Cir. 2001)

Hoodo v. Holder 558 F.3d 184 (2d Cir.2009)                      17

In re Barker  839 F.3d 1189 (9th Cir. 2016)                     16

Kao v. Holiday (2017) 12 Cal.App.5th 947                        31

Leuthner v. Blue Cross  454 F.3d 120(3rd. Cir. 2006)            9

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)             9

Pressler v. Donald L. Bren Co. (1982) 32 Cal.3d 831             29

Qwest Comm. Int'l v Fed. Comm. Comm'n  240 F.3d 886            10
    (10th Cir. 2001)

Rosen v. State Farm General Ins. Co. (2003) 30 Cal.4th 1070     26

Trinidad y Garcia v. Thomas  683 F.3d 952  (9th Cir. 2012)      17

Whitlock v. Brown 596 F.3d 406 (7th Cir. 2010)                  17

## STATUTES

| | |
|---|---|
| Federal Rules of Civil Procedure, Rule 11 | 17 |
| 11 USC §1101 | 13, 43 |
| 11 USC  §1107 | 43 |
| 11 U.S.C. §§105, 323, 502, 541(a), 542, 544, 548, 549, 550 and 551 | 1 |
| 28 U.S.C. §§151, 157 and 1334 | 1 |
| 28 U.S.C. §157(b)(2)(A), (C), (E), (H), and (O) | 1 |
| 28 U.S.C. §158 | 1 |
| Cal. Civil Code §1638 | 24 |
| Cal. Civil Code §1639 | 24 |
| Cal. Civil Code  §1643 | 39 |
| Cal. Code of Civil Procedure §483.010 | 34 |
| Cal. Code of Civil Procedure. §483.015 | 35 |
| Cal. Code of Civil Procedure §482.110 | 35 |
| Cal. Labor Code §201 | 27 |
| Cal. Labor Code §202 | 28 |
| Cal. Labor Code §203 | 27 |
| Cal. Labor Code §218.5 | 28 |
| Cal. Labor Code §226(a) | 31 |

### APPELLANT JENNIFER MORGAN'S OPENING BRIEF

Appellant Jennifer Morgan submits this Appellant's Opening Brief via counsel David Hubbard.

### I. STATEMENT OF JURISDICTION

This is an appeal from a final judgment in an adversary action in the Bankruptcy Court, entered on May 23, 2017, after a bench trial. (Judgment, Appendix Ex. 17. Appendix exhibits will hereafter be referred to as "App. Ex. X.") The notice of appeal was timely filed on May 31, 2017 (App. Ex. 18.)

The FAC (App. Ex. 1, Par. 1, p. 3)  alleged that the Bankruptcy Court had jurisdiction  under 28 U.S.C. §§151, 157 and 1334 and 11 U.S.C. §§ 105, 323, 502, 541(a), 542, 544, 548, 549, 550 and 551. It also alleged that the adversary proceeding was a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (C), (E), (H), and (O).  However, at trial plaintiff/appellee Heide Kurtz offered no evidence of standing, and Appellant disputes jurisdiction.

Assuming that the trial court had jurisdiction, this court has jurisdiction over this appeal under 28 U.S.C. §158.

### II. STANDARD OF REVIEW

Carter v. Healthport Technologies  822 F.3d 47, 57 (2nd Cir. 2016) held:

"On appeal, 'if the [district] court . . . resolved disputed facts, we will accept the court's findings unless they are 'clearly erroneous.'"

1

[Citation.] We review de novo the district court's conclusions of law, as well as findings that are based on undisputed facts evidenced in the record ... "

### III. STATEMENT OF ISSUES

1.  Did the court have jurisdiction to enter a judgment against Morgan even though Kurtz failed to prove standing? Standard of review is de novo because the court resolved no issues of disputed facts.

2.  Did  the court err in finding that Morgan had no contract to be paid her salary despite the conclusive judicial admission in the FAC to the contrary? Standard of review is mixed: if this court finds that the trial court resolved a disputed issue of fact regarding the existence of the contract, the standard is whether the finding were clearly erroneous. If this court finds that the judicial admissions as to the existence of the contract made in the FAC are valid as a matter of law, and the court had no authority to ignore the admissions, then the review is de novo.

3. If this court finds that Morgan did have a contract to be paid her salary: did the court err in requiring Morgan to return $120,000 she received from the loan proceeds despite lack of evidence by Kurtz proving what the amount due to Morgan was and that she received too much? Standard of review is de novo because the court resolved no issue of disputed fact as to how much Morgan was owed, for it found that she had

2

no valid contract.

4. Did the court err in requiring Morgan to return $20,000, part of the amount she received from the loan proceeds, despite unrefuted evidence that she had already returned the money to the Club? The standard of review is de novo because the evidence was undisputed.

5. Did the court err in finding that Morgan had converted $6,400? The standard of review is de novo because the evidence that Morgan did not convert the money and that Kurtz's evidence contradicted her own pleadings was undisputed.

### IV.  STATEMENT OF THE CASE

After a 5-day bench trial, the court issued a judgment (App. Ex. 17.) It found that Morgan, CEO of The Woman's Club of Hollywood, had received $120,016.73 out of the proceeds of a $700,000 loan from Scapa (Judgment, App. Ex. 17, Par. 3.)  Undisputed testimony at trial showed that Morgan contended that she was owed back salary and that in June, 2011, she threatened to quit and sue the Club on a labor claim (App. Ex. 19: March 9, 2017, transcript, p. 157, lines 6-20.)  President of the Club, Nina Van Tassell, then executed a note and trust deed of $100,000 to Morgan (FAC, App. Ex. 1, Par. 64, lines 24-27.) In exchange for the note and trust deed, Morgan did not quit as CEO and did not sue; she settled her

3

claim (App. Ex. 19: March 9, 2017, transcript, p. 157, lines 6-20.) Morgan then obtained the Scapa loan for the Club, and her trust deed was paid off from the loan proceeds in escrow on August 22, 2011 (FAC, App. Ex. 1, Par. 71, p. 20, line 28- p. 30, line 1.) The court found that no one on the Board would admit that he/she voted for the $700,000 Scapa loan, and the court thus found no Board approval for it (App. Ex. 16, May 17, 2017, transcript, p. 58, lines 15-20.) However, the court also found that no one ever complained about the loan (Id., at p. 60, lines 10-11; p. 66. lines 8-9.) The court found that there was a need for a loan, but possibly not for $700,000 (Id., at p. 60, lines 5-6.) However, the Scapa loan could not have been for less because of the trust deeds of Van Tassell and Morgan, who would not subordinate to a trust deed from Scapa.  Thus, the loan had to be for $700,000 (Id., at p. 60, lines 17-23.) The court found that Kurtz did not meet her burden to prove that much of the loan money was **not spent** on repairs and it found that the record was not clear and the facts were in dispute as to the cost of repairs (Id., at p. 67, lines 1-12.)

The court found that the Board did not approve Morgan's contract (May 17, 2017, oral argument: App. Ex. 16, at p. 58, lines 6-21.) This finding is contradicted by Kurtz's judicial admissions in the FAC that the Board agreed to pay Morgan $8,000 a month and that the Resolution

4

approving the contract was entered into the Minutes on July 21, 2010, and ratified again on August 28, 2010 (FAC, App. Ex. 1, Pars. 38 and 39, and Ex. 3 thereto.) Because the court found that she had no contract, it entered judgment against Morgan for $120,016.73 for breach of fiduciary duty because she got paid that sum.

There was uncontradicted testimony that the Club's accountant had already made Morgan return $20,000 from the loan proceeds (App Ex. 19, p. 135, lines 5-25 to p. 137, lines 1-4.) The court thus awarded  a double recovery to plaintiff as to the $20,000.

The court also entered judgment against Morgan for converting $6,400 (Judgment, App. Ex. 17, Par. 1.) The money came from a check to the Club. CEO Morgan had used the funds to pay Club's bills and on court transcripts, after the Board, acting as debtor in possession, approved Morgan's use of the funds (App Ex. 7, p 218, lines 8-25,) This evidence was unrefuted, but   the court nonetheless found Morgan liable for conversion. It made no finding that the Club was or was not debtor in possession and able to control its own funds. The 18th. Claim for conversion of the FAC (App. Ex. 1) alleged that Morgan had deposited the $6,400 check into her own account, an allegation Kurtz did not prove.

Kurtz produced no evidence of her standing at trial, and defendants

5

Morgan and Alda Shelton argued this defect in all their briefs. However, Kurtz never responded to the arguments in any of her three brief (Briefs, App. Exhibits. 10-15.)

### V. SUMMARY OF THE ARGUMENT

1. Kurtz presented no evidence of standing, and the court had no jurisdiction to enter a judgment. Kurtz did not prove that she was the plaintiff in the FAC--the Chapter 11 Trustee.  Moreover, she did not prove that she was the Plan Trustee or that the Plan Trustee had any standing. The alleged Plan Trustee was not the plaintiff in the FAC. However, at trial Kurtz's counsel no longer even claimed that Kurtz was the Chapter 11 Trustee in the captions of their trial briefs. No motion to amend the FAC was made nor could one be granted, for Kurtz ignored the standing issue at all stages of the trial.

2.  The court found that CEO Morgan had no contract. It erred in ignoring the FAC's conclusive judicial admissions that the Board had entered into a contract for $8,000 a month with Morgan, as approved in its July 21, 2010, Resolution. The court made a finding--on the basis of no testimony at all from the Board that voted on the Resolution--that the Board defrauded Morgan: the Board had a secret intention not to perform and led Morgan to work for free, believing she had a contract. The court

6

did not follow the canons of contract interpretation, and further inserted non-existent terms into the Resolution, if it even considered the Resolution at all.

If the court finds that the Resolution was a valid contract, then Kurtz did not meet her burden to prove that Morgan was not entitled to the $100,000.  Kurtz failed to meet her burden to show that Morgan had been overpaid.

3. Morgan gave back $20,000 of what she obtained from the Scapa loan. The judgment awards a double recovery.

4, Kurtz did not prove her allegation of the FAC that Morgan converted $6,400 by depositing the Club's money into her own account. Further,  Morgan's evidence that there was no conversion was unrefuted.

## VI.  PLAINTIFF HEIDE KURTZ DID NOT TESTIFY AT TRIAL AND PRESENTED NO EVIDENCE OF HER IDENTITY, MUCH LESS HER STANDING. SHE WAS A PHANTOM PLAINTIFF. IT WAS ERROR TO ENTER A JUDGMENT IN HER FAVOR.

### 1. Relevant case law on standing.

 ACLU-NJ v. Township of Wall ACLU-NJ  246 F.3d 258, 261  (3rd Cir. 2001) stated:

"Plaintiffs bear the burden of proving standing. See Lujan v. Defenders of

7

Wildlife, 504 U.S. 555, 561 (1992). Plaintiffs must carry that burden 'in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at successive stages of the litigation.' Lujan, 504 U.S. at 561; see also FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 838 (3d Cir. 1996). **As this appeal comes to us after full litigation on the merits, plaintiffs must establish standing in the same manner as would be required to prevail on the ultimate merits of their case.**"

The instant case also comes to appeal after a trial on the merits. In Doe v. Tangipahoa Parish School Bd. 494 F.3d 494 (5th Cir. 2007), the plaintiffs failed to offer the requisite evidence of standing. The court remanded the case to the District Court and ordered it dismissed, holding, at p. 499:

"Without the requisite specifics, this court would be speculating upon the facts. This is something we cannot do, particularly **in the standing context, where the facts must be proven, not merely asserted or inferred.** See Lujan, 504 U.S. at 561, 112 S.Ct. at 2136. Notwithstanding the dissents, plaintiffs' counsel admitted both in briefing and in oral argument to the en banc court that the necessary proof is absent from the record. No amount of creative inferences from the pretrial order or "stipulations" can overcome this defect. As **standing is not subject to waiver by the parties**, see supra note 1, the Board's pretrial, and even post-trial, failures to contest standing cannot, ipso

facto, create jurisdiction in federal court."

Proof of injury in fact to Kurtz is an essential element of the standing inquiry.   At minimum, Kurtz had to prove her identity and capacity in order to arrive at standing.   Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) held that a party seeking to invoke federal jurisdiction bears the burden of proving standing and that "the irreducible constitutional minimum of standing contains three elements: (1) injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) redressability." (Id. at 560-61.)

Carter v. HealthPort Technologies, LLC  822 F.3d 47, 55  (2nd Cir. 2016) explained a plaintiff's burden to prove standing:

"First, the plaintiff must have suffered an 'injury in fact'--**an invasion of a legally protected interest** which is (a) concrete and particularized  ...

...

The injury-in-fact element requires that the plaintiff be 'the proper party to bring this suit.' Raines v. Byrd, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). '[A] plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute . . . .' id. at 819."

Leuthner v. Blue Cross  454 F.3d 120. 127 (3rd. Cir. 2006) held: "For constitutional and prudential standing it is well established that standing must exist at the time the suit is commenced and **throughout the  suit."**

Florida Department of Ins. V Chase Bank of Texas Nat'l Ass'n 274 F.3d 924, 929 (5th Cir. 2001) stated:

9

"If the plaintiff is not the party who sustained the concrete and particularized injury for which a remedy is sought, and is not the assignee or designated representative of the injured party,  then it does not have standing."

Qwest Comm. Int'l v Fed. Comm. Comm'n  240 F.3d 886, 891 (10th Cir. 2001)  stated:

"'We are obliged to address standing sua sponte because it involves a constitutional limitation on a federal court's jurisdiction, and federal courts are under an independent obligation to examine their own jurisdiction.' . ... The party invoking federal jurisdiction bears the burden of establishing th[is] element.'"

The court in  Carter v. HealthPort Technologies 822 F.3d 47, 56 (2nd Cir. 2016)  stated:

"Since the elements of Article III standing   are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.  id. Thus, **the showing that must be made in order to withstand a dismissal for lack of standing increases as the suit proceeds."**

## 2. Kurtz failed to prove who she was and thus did not show injury in fact to herself or invasion of a legally-protected interest.

The trial court herein ordered that trial be held on the FAC, not on a

10

joint stipulation. The court said (Nov. 29, 2016, hearing transcript, App. Ex. 3, p. 4):

> "COURT: That it's just -- so what I'm going to do, by the way, I'm not even going to --I can't approve this, but I'm not going to ask you to do it [joint pretrial stipulation] again, because it's clear to  me that it's not going to happen.  So, I am going to try this case on the -- basically, we have the complaint."

The FAC, filed February 24, 2014, (App. Ex. 1) alleges in Par. 4, at p. 3: "The Trustee is the duly appointed, qualified and acting chapter 11 trustee for the Debtor's bankruptcy Estate." The Debtor was The Woman's Club of Hollywood. It was Kurtz's burden to prove her appointment as Chapter 11 Trustee, in order to show invasion of a legally-protected interest in herself. It was her burden to show standing at all stages of the case, from date of filing the complaint to the end of trial.

At the November 29, 2016, hearing, the court said that the initial trial testimony would be by written declaration. Plaintiff's brief and declarations were due by December 28, 2016 (App. Ex. 3, Nov. 29, 2016, transcript,  at p. 17 and p. 22.) The court said that a party offering a declaration must be available for cross-examination at trial. Otherwise, his written pre-trial declaration would not be admitted.  The following discussion was held (Id., at p. 34):

1 1

"MR. DEMAREST: I'm sorry. I just want to clarify. In regards to the declarations that may be prepared, who's going to be -- is the party that's doing the declaration responsible for having those people present for the cross-examination?

THE COURT: Yes. Because if they're not here, it's as if they didn't have a declaration. Absolutely."

Heide Kurtz offered no moving trial declaration.  She purported to offer a "rebuttal declaration" (App. Ex. 4.) Defendants Alda Shelton and Jennifer Morgan objected, and most of Kurtz's alleged rebuttal declaration was stricken on the first day of trial (App. Ex. 5: Feb. 15, 2017, trial transcript, pp. 25-26.) Moreover, her counsel did not call Kurtz to testify at trial, and she was thus was not available for cross-examination (App. Ex.6. These are the transcript pages from all 5 days of trial, listing the witnesses called by Kurtz's counsel to testify.)

At trial, Kurtz's counsel, Autumn Spaeth, stated to the Court:

"MS. SPAETH: So far the Court's procedure has been that we are moving in the declarations after the person has sat for cross examination,...." (App. Ex. 7, p. 248, lines 7-9.)

Since Kurtz was not called to testify, her alleged rebuttal declaration was not admitted into evidence.  That declaration contained no proof of her standing, in any event. Kurtz thus presented no evidence of her very identity

12

or proof of how she--an unidentified person who never took the stand--suffered injury-in-fact or invasion of her legally-protected interest.

Moreover, the designation of the plaintiff in the 2013 FAC was "Chapter 11 Trustee." However, in the title page of Kurtz's 2016 opening trial brief (App. Ex. 9), Kurtz was now called only "the Plan Trustee." In Kurtz's post-trial brief, the title page again called Kurtz "Plan Trustee" (App. Ex. 12.) Kurtz's Reply Brief (App. Ex. 15) was entitled "Plan Trustee's Omnibus Reply." Kurtz was never referred to as the Chapter 11 Trustee in trial papers; yet the Chapter 11 Trustee was the plaintiff.  The 2013 FAC was never amended to substitute a new party plaintiff. The FAC contained no words "Plan Trustee" and no allegation that Heide Kurtz was Plan Trustee or allegations of standing. The FAC did not establish that a never-referred-to Plan Trustee had any personal stake in the litigation.

Standing must exist at all times during the suit.  The Chapter 11 Trustee and the Plan Trustee are two different entities and need not be the same person.  The governing statute shows that the Chapter 11 Trustee ceases to exist after a Plan has been confirmed.

11 U.S.C. §1104 states:

"Appointment of trustee or examiner

(a) At any time after the commencement of the case **but before**

13

**confirmation of a plan,** on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—[on various grounds.]"

Thus, Kurtz had to meet potentially 3 burdens to show standing at all stages of the proceedings: (1) she had to prove that she had been appointed the Chapter 11 Trustee and thus had a legally-protected interest and was the proper plaintiff at the beginning of the suit; (2) she had to prove that a Plan had been approved and that she had been appointed the Plan Trustee, since that was apparently her new theory at trial; and (3) she had to prove that the Plan Trustee had been given the rights of the Chapter 11 Trustee; and if so, she had to amend the FAC to substitute the Plan Trustee for the Chapter 11 Trustee.  However, Kurtz offered no admissible evidence whatsoever at trial of her identity or of any of the above facts. She could not--and did not--even seek to amend to conform to proof.  She had offered no proof to conform to.  In her motion in this court to extend the time to file an opening brief, her counsel now calls her the "Chapter 11 Trustee AND Plan Trustee," two inconsistent designations, neither of which she proved below. Kurtz cannot decide who she should be and takes all possible positions on appeal, hoping that her caption will substitute for the proof she failed to produce at trial.

Defendant Alda Shelton's pre-trial brief, filed after defendants had

14

been served with all of Kurtz's pretrial documentary evidence, her requests for judicial notice, and her trial declarations, asserted that Kurtz had not proven her standing.  (See Shelton's corrected pre-trial brief, App. Ex. 10, Section II.) Appellant joined in Shelton's pre-trial brief (See Morgan's pre-trial brief, App. Ex. 11, p. 2, line 13.)

Despite the arguments in both defendants' pre-trial briefs, at trial Kurtz's attorneys offered no testimony or evidence of Kurtz's standing-- that is, no proof that she suffered "invasion of a legally protected interest" or that she was the proper plaintiff to bring the suit, as either Chapter 11 Trustee or Plan Trustee.   Kurtz offered no evidence that she had been appointed the Plan Trustee or that the alleged Plan Trustee had the rights of the Chapter 11 Trustee to continue the suit. The entire thrust of Kurtz's attorneys at trial was to seek to prove bad acts by defendants. They ignored their own threshold burden of proving exactly who Heide Kurtz was and why she had standing.

Kurtz's Post-Trial Brief (App. Ex. 12) was no better.  It did not argue that Kurtz had proven at trial that she had standing. The issue was completely ignored, despite Appellant's and Shelton's pre-trial briefs raising the issue.   In response to Kurtz's total failure at trial to testify, much less to prove her standing, Shelton's and Morgan's post-trial briefs, filed after

15

they saw Kurtz's post-trial brief, again asserted that Kurtz had not proven standing. [See Morgan's post-trial brief (App. Ex. 13, at p. 2) which joined in the argument in Shelton's post-trial brief (App. Ex. 14, Section VIII.)]

Kurtz's Post-Trial Reply Brief (App. Ex. 15)--her third brief--still did not respond to defendants' standing argument. This vacuum of argument in her three briefs was a concession that Kurtz could not overcome her lack of evidence and her deficient pleading. Kurtz's only rebuttal at all stages of the case was to cast a blind eye and avoid the issue.

It was Kurtz's burden to plead and prove standing at all stages of the case, and she failed to do so. The court resolved no issue of fact regarding her standing, for Kurtz presented no evidence. As a matter of law, it was error for the court to award any judgment in favor of Kurtz because the court had no jurisdiction. The case should have been dismissed at the end of trial, for lack of proof of Kurtz's standing.

### VII. JUDICIAL ADMISSIONS IN THE PLEADINGS ARE BINDING.

In re Barker  839 F.3d 1189, 1195 (9th Cir. 2016) held:

"The Ninth Circuit has acknowledged the doctrine of judicial admissions. [Citation.] 'Judicial admissions are formal admissions in the pleadings **which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.' [Citation.] Judicial admissions are 'conclusively binding on the party who**

16

made  them.'"

Trinidad y Garcia v. Thomas  683 F.3d 952, 982 (9th Cir. 2012) stated; " A judicial admission is binding before both trial and appellate courts." Whitlock v. Brown 596 F.3d 406, 412 (7th Cir. 2010) held:

> **"A judicial admission trumps evidence. [Citation.]   This is the basis of the principle that a plaintiff can plead himself out of court."**

Hoodo v. Holder 558 F.3d 184, 191 (2d Cir.2009) stated:

"Facts admitted by a party 'are judicial admissions that bind th[at] [party] throughout th[e] litigation.' Gibbs ex rel. Estate of Gibbs v. CIGNA Corp., 440 F.3d 571, 578 (2d Cir.2006); see also Oscanyan v. Arms Co., 103 U.S. 261, 263, 26 L.Ed. 539 (1881) (**'The power of the court to act in the disposition of a trial upon facts conceded by counsel is as plain as its power to act upon the evidence produced.'**); 2 McCormick on Evid. §254 (6th ed. 2006) (**'Judicial admissions are not evidence at all. Rather, they are formal concessions in the pleadings in the case or stipulations by a party or counsel that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. Thus, a judicial admission, unless allowed by the court to be withdrawn, is conclusive in the case ...**'"

Federal Rules of Civil Procedure, Rule 11, states:

"(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best

17

of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: .. **(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."**

## VIII. THE FAC MADE THE JUDICIAL ADMISSION THAT MORGAN HAD AN EMPLOYMENT CONTRACT. IT WAS ERROR FOR THE COURT TO FIND THAT MORGAN HAD NO CONTRACT, FOR THE ADMISSION OF THE FAC WAS CONCLUSIVE.

The first claim for relief of the FAC is for breach of fiduciary duty against Jennifer Morgan, et al. The judgment (App. Ex 17, p. 2) stated:

"The Court finds that plaintiff has shown sufficient evidence to meet her burden of proof to establish liability as to defendant Jennifer Morgan ("Morgan") on three of the transactions that are the subject of the First Amended Complaint, together with prejudgment interest on those transactions, as follows: ...

3. Morgan's receipt of $120,016.73 directly from escrow in connection with the SCAPA loan: $120,016.73 plus prejudgment interest ... ."

The FAC (App. Ex. 1, at page 11) alleges:

"38. The Trustee is informed, believes, and alleges that, **during the June 26, 2010, meeting, the Board discussed the need to decide the Executive Director contract because Morgan was going to stop performing services for the Debtor as of July 24, 2010.**

39. The Trustee is informed, believes, and alleges that in or about July

18

21, 2010, **the Board agreed with Morgan to compensate Morgan for serving as the Debtor's Executive Director. The Board agreed to pay Morgan $300 per week for expenses and to accrue Morgan's 'salary at $8,000 a month starting August 1, 2010, payable only if money exists'** because the Debtor could not afford to pay Morgan at that time. Minutes of the July 21, 2010, Meeting are attached hereto as Exhibit '3'."

The July 21, 2010, Minutes, authenticated as Exhibit 3 to the FAC (App. Ex. 1, at p. 69), state, at Par. 4:

"It is finally decided **to accrue Jennifer Morgan's salary at $8,000 a month** starting August 1,2010. Payable only if money exists.

"Resolution 5. Motion made by Kay Tornborg to Compensate Executive Director. Motion seconded by Kandace Krapu. Compensation for the Executive Director passes. 8 yes to 2 no votes that came from Christine Zardenta and Ian Duncan."

The last line of the Minutes states on page 4 that the Minutes were "Accepted with Resolutions on August 28, 2010, offered into record by Michael Wallace, Recording Secretary."  These approved Minutes, at p. 1 (App. Ex. 1, p. 66),  list the 10 directors present at the meeting, with the eleventh absent. Morgan was not a director. She did not vote on her own salary. The Minutes show that Morgan was present and witnessed the vote.

Par. 38 of the FAC makes the conclusive judicial admission that Morgan threatened to quit as of July 24, 2010, unless she were given a contract.  Par. 39 of the FAC, alleging the contract, shows that the Board got Morgan to stay on

19

by agreeing to pay her. The FAC's admissions show that the Resolution was a valid contract, as well as a basis for a claim by Morgan of estoppel and detrimental reliance on the Resolution.  Kurtz's judicial admissions will be relevant later in this brief, for Kurtz took the contradictory position in her post-trial briefs: that the Board never agreed to pay Morgan because it could not afford her; that Morgan was owed nothing for any of her services; and that she had to return 100% of the money paid her.  Kurtz made no motion to withdraw the judicial admissions of Pars. 38 and 39 of the FAC, and they are conclusive in this appeal.

Despite the judicial admission in the FAC and the undisputed evidence contained in the admittedly-valid and authenticated July 21, 2010, Resolution, the court found that Morgan had no contract.  It stated at the May 17, 2017, oral argument (App. Ex. 16, at p. 62, lines 5-18):

"THE COURT: And the third one, the one thing that the testimony is clear, that -- for me anyway, **that there was not a board approval of the contract.** The one thing that people were adamant about is **the board simply could not afford** -- or at that time, there was testimony that at the--at some point, **if the club was actually able to pay.** When I -- to me, that means not able because you borrow the money, **that's able to pay financially, that the money is coming in**. And I do -- and so, as far as I am concerned, I -- there is -- **I am not satisfied at all that there was ever a binding contract** to -- for the payment of the -- of

20

this. And, therefore, **the money that came out of the $120,216.73 [the August, 2011, Scapa loan] was not properly disbursed** [to Morgan.]"

It was error for the court to find that there was no Board approval of Morgan's contract when the FAC judicially admitted that Morgan was going to quit without a contract; when the FAC admitted that the Board approved the contract; and when the FAC even pleaded and authenticated  the July 21, 2010, Board Resolution as an exhibit.  The court cannot make findings contrary to judicial admissions and to an authenticated and admittedly-valid Board Resolution.  A judicial admission trumps contrary evidence, and it was error for the court even to consider evidence or argument contrary to the admissions in the FAC.  The July 21, 2010, Resolution shows at the bottom that it was ratified by the Board **a second time** on August 28, 2010, after the initial vote on July 21. There was no basis for the court to find that the Board had not approved Morgan's contract. The Resolution **was** the contract, assuming that an employee even needs a written contract in order to get paid.

At trial, Morgan was entitled to rely on the FAC's judicial admissions. She was not required to offer evidence to prove what Kurtz had already conceded.

21