DISTRICT COURT CASE NO. 2:17-CV-04157-RGK

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JENNIFER MORGAN

Appellant and Cross-Appellee,

v.

HEIDE KURTZ, PLAN TRUSTEE

Appellee and Cross-Appellant.

---

On Appeal from the United States Bankruptcy Court
for the Central District of California
The Honorable Barry Russell, United States Bankruptcy Judge

---

REPLY BRIEF OF APPELLEE AND CROSS-APPELLANT

---

SMILEY WANG-EKVALL, LLP
Lei Lei Wang Ekvall, State Bar No. 163047 lekvall@swelawfirm.com
Kyra E. Andrassy, State Bar No. 207959 kandrassy@swelawfirm.com
Robert S. Marticello, State Bar No. 244256 rmarticello@swelawfirm.com
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:  714 445-1000
Facsimile:   714 445-1002
Attorneys for Appellee and Cross-Appellant, Heide Kurtz, Plan Trustee

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................1

II.  BANKRUPTCY COURT JURISDICTION ...................................1

III.  THE PLAN TRUSTEE HAD PROPER STANDING TO PURSUE CLAIMS AGAINST MORGAN....................................................4

IV.  THE TRUSTEE DID NOT FABRICATE OR FALSIFY DOCUMENTS ..........................................................................5

V.  THE TRUSTEE'S OPENING BRIEF CONTAINED A PROPER DISCUSSION REGARDING THE STANDARD OF REVIEW.................6

VI.  MORGAN'S REQUEST TO STRIKE NUMEROUS EXHIBITS IS WITHOUT JUSTIFICATION AND SHOULD BE DENIED ......................7

VII.  THE BANKRUPTCY COURT DID NOT ERR IN FINDING THAT MORGAN HAD NO ENFORCEABLE CONTRACT, AS ARGUED BY KURTZ IN HER TRIAL BRIEF AND PROPERLY DETERMINED BY THE BANKRUPTCY COURT ....................................9

VIII.  WHETHER MORGAN RETURNED $20,000 TO THE ESTATE IS NOT RELEVANT TO THE ISSUE OF WHETHER THE BANKRUPTCY COURT APPLIED THE CORRECT LAW IN CALCULATING DAMAGES ......................................................12

IX.  THE BANKRUPTCY COURT CORRECTLY FOUND THAT MORGAN CONVERTED $6,400 OF FUNDS BELONGING TO THE ESTATE BASED ON HER OWN TESTIMONY .............................12

X.  THE BANKRUPTCY COURT CORRECTLY FOUND THAT MORGAN BREACHED HER FIDUCIARY DUTY BUT ERRED IN CALCULATING DAMAGES BECAUSE IT APPLIED THE WRONG LAW ..........................................................................14

XI.  THE BANKRUPTCY COURT SHOULD BE INSTRUCTED TO RECALCULATE DAMAGES, TAKING INTO CONSIDERATION THE AMOUNT OF HARM CAUSED BY THE BREACHES OF FIDUCIARY DUTY AND NOT THE AMOUNT RECEIVED BY MORGAN...................................................................................15

XII.  THE TRUSTEE REQUESTED PRE-JUDGMENT INTEREST AT

i

THE TRIAL COURT LEVEL AND IT IS NOT WAIVED.........................17

XIII. THE TRUSTEE DID OBTAIN THE BANKRUPTCY COURT'S AUTHORIZATION TO EMPLOY THE FIRM TO REPRESENT HER IN THE UNDERLYING LITIGATION AS WELL AS OTHER MATTERS ARISING FROM THE UNDERLYING BANKRUPTCY CASE .........................................................................................17

XIV. CONCLUSION.........................................................................................17

CERTIFICATE OF COMPLIANCE.......................................................20

# TABLE OF AUTHORITIES

**Page**

## CASES

*In re Retz,*
    606 F.3d 1189, 1196 (9th Cir. 2010) ...........................................................11

*U.S. v. Hinkson,*
    585 F.3d 1247, 1261-62 & n. 21 (9th Cir. 2009)..........................................11

*Wellness Int'l Network, Ltd v. Sharif,*
    135 S.Ct. 1932 (2015)........................................................................................2

## STATUTES

11 U.S.C. § 105 ....................................................................................................2

11 U.S.C. § 323 ....................................................................................................2

11 U.S.C. § 502 ....................................................................................................2

11 U.S.C. § 541(a) ...............................................................................................2

11 U.S.C. § 542 ....................................................................................................2

11 U.S.C. § 544 ....................................................................................................2

11 U.S.C. § 548 ....................................................................................................2

11 U.S.C. § 549 ....................................................................................................2

11 U.S.C. § 550 ....................................................................................................2

11 U.S.C. § 551 ....................................................................................................2

11 U.S.C.§ 1107 .................................................................................................13

11 U.S.C.§ 363 ...................................................................................................13

11 U.S.C.§ 363(b) ....................................................................................... 13, 14

28 U.S.C. § 1334 ..................................................................................................2

28 U.S.C. § 151 ....................................................................................................2

28 U.S.C. § 157 ....................................................................................................2

**RULES**

Fed. R. App. Proc. 28..........................................................................................8

Fed. R. App. Proc. 28(e) ....................................................................................8

Fed. R. Bankr. Proc. 8014..................................................................................7

Fed. R. Bankr. Proc. 8014(a)(8)........................................................................7

Local Bankruptcy Rule 2014-1 ................................................................ 13, 14

Local Bankruptcy Rule 2014-1(a)(1)................................................................13

# I.    INTRODUCTION

Morgan makes several specious arguments in her brief, all of which should be rejected.  She contends that the bankruptcy court lacked jurisdiction, when it is undisputed that she did not contest it at trial and had expressly, knowingly, and voluntarily consented to the bankruptcy court's jurisdiction.  Morgan has presented no sound legal argument to support her contention that the bankruptcy court erred in rejecting her lack of standing argument.  Morgan attributes various misdeeds to the Trustee, none of which is substantiated or true.  Morgan's own brief illustrates the Trustee's argument that the bankruptcy court erred as a matter of law in its analysis of damages and that it is clear that the bankruptcy court's judgment should be reversed and remanded with instructions to the bankruptcy court to analyze damages from the Club's[1] perspective, which should include the amount necessary for the Club to repay the unauthorized Scapa Loan, and not from the perspective of the amount paid to and received by Morgan.

# II.    BANKRUPTCY COURT JURISDICTION

There is no validity to Morgan's arguments that the bankruptcy court lacked jurisdiction or that the Trustee has waived her arguments in response.  In fact, it is

---

[1]    Capitalized terms not defined herein shall have the definition ascribed in the Trustee's opening brief.

Morgan who expressly consented to the bankruptcy court's jurisdiction, failed to raise it at trial, and failed to raise it in this appeal as an issue on appeal.

First, as set forth in the amended complaint filed by Heide Kurtz, the former chapter 11 trustee and presently the Plan Trustee (the "Trustee"), the bankruptcy court had jurisdiction over the underlying adversary proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334 and 11 U.S.C. §§ 105, 323, 502, 541(a), 542, 544, 548, 549, 550 and 551.  (First Amended Complaint, Appellant's App., Exh. 1, at p. 3, ¶ 1).  In addition, a bankruptcy court's authority and jurisdiction also exist when there is knowing and voluntary consent by the parties.  *See Wellness Int'l Network, Ltd v. Sharif*, 135 S.Ct. 1932 (2015) (holding that the bankruptcy court can exercise authority and jurisdiction over *Stern* claims if the parties consent and that such consent need not be express but must be knowing and voluntary).  In this case, Morgan expressly, knowingly and voluntarily consented to the jurisdiction of the bankruptcy by signing the following written statement, "I [x] do  [ ] do not consent to the bankruptcy court's entry of a final judgment and/or order in this adversary proceeding.  I waive my rights to a jury trial."  (Joint Status Report, Appellee's ER[2], Tab 77 at p. 4211).  Here, with Morgan's express consent, there is no question that the bankruptcy court had proper jurisdiction over core claims, non-core claims, *Stern* claims, or otherwise.

---

[2] Appellant's Excerpts of Record

Morgan's argument that the Trustee should be prevented from addressing this issue in her reply brief is without basis.  First, although the joint status report was not admitted as an exhibit at trial, it was part of the Bankruptcy Court's record and was included in the Trustee's designation of the record on appeal.  Second, Morgan never objected to the bankruptcy court's jurisdiction at trial, presumably because she had expressly, knowingly, and voluntarily consented to it.  (Morgan's Trial Declaration, Appellee's ER, Tab 14; Morgan's Trial Brief, Appellee's ER, Tab 78; Morgan's Post-Trial Brief, Appellee's ER, Tab 79).  Third, there is only a one sentence statement in Morgan's opening brief questioning the bankruptcy court's jurisdiction.  Morgan failed to include this issue in her statement of issues on appeal.  (Appellee's ER, Tab 80).  The first time the issue has been substantively addressed by Morgan is in her response brief.  Cleary, it is Morgan who has waived her rights to contest to the bankruptcy court's jurisdiction, by expressly consenting to it, by not raising it at trial, and by not including it as an issue on appeal.  To argue that the Trustee cannot respond would be unfounded and unfairly prejudicial, particularly when Morgan waived this issue long ago and the bankruptcy court's record is clear that she expressly, knowingly, and willingly consented to jurisdiction of the bankruptcy court.

### III.    THE PLAN TRUSTEE HAD PROPER STANDING TO PURSUE CLAIMS AGAINST MORGAN

Morgan argues that the Trustee did not have standing to bring the action against her and therefore the bankruptcy court erred in awarding a judgment in favor of the Trustee.  This argument is nonsense and was considered and correctly rejected by the bankruptcy court.  (May 17 Trial Transcript, Tab 72 at p. 3693, ll. 13-24).  Thus, clearly, the Trustee did not waive the issue of standing.

The Trustee was appointed as the chapter 11 trustee and, once her chapter 11 plan (the "Plan") was confirmed, became the plan trustee.  *See Order Confirming Chapter 11 Trustee's Chapter 11 Plan of Reorganization (Dated April 8, 2014) [As Amended by Docket No. 442 Filed on July 2, 2014], as Modified by this Court Order* at 74, attached to the Appellee's ER as Tab 3.  The confirmed Plan and the order approving it appointed the Trustee as the "plan trustee" and Section III.F.4. of the Plan specifically vested the Trustee with standing to continue the litigation against Morgan and Shelton.  *See Trustee's Chapter 11 Plan of Reorganization (Dated April 8, 2014)* attached as Appellee's ER, Tab 4 at p. 107.  Section III.F.8. of the Plan also explicitly provided that the plan trustee would serve as the successor to the chapter 11 trustee for all purposes.  *See* Plan at p. 109. Accordingly, there is no question that the bankruptcy court correctly determined that the Trustee, at all times, had standing to prosecute the underlying litigation.

## IV.   **THE TRUSTEE DID NOT FABRICATE OR FALSIFY DOCUMENTS**

As with Ms. Shelton's similar allegation in the related appeal, Morgan's accusation that the Trustee fabricated or falsified documents is baseless.  Morgan complains of three documents: the Trustee's appointment order, the plan of reorganization, and the order confirming the plan of reorganization.  The Trustee requested that the bankruptcy court take judicial notice of the Plan of Reorganization and the Plan Confirmation Order on March 31, 2017.  (Post-trial Brief, Appellee's ER, Tab 81 at pp. 4285, 4301).  The Trustee provided authority to the bankruptcy court that it may take judicial notice at any stage of the proceeding. (Tab 81 at pp. 4285, 4301).  The bankruptcy court did just that when during the post-trial hearing on May 17, 2017, it stated, "… the one thing that judicial notice is appropriate … clearly, under then [sic] plan, clearly the Trustee has standing." (Appellee's ER, Tab 72 at p. 3693).

The Trustee's appointment order, although it was designated by the Trustee, was not relied upon by the Trustee in her opening brief.

Morgan also complains that the 341(a) transcript was never admitted into evidence, when, in fact, it was. After ruling it would not take judicial notice of the 341(a) transcripts, the bankruptcy court proceeded to say, "If you have the [certified] transcripts and so forth, that's a different matter."  (February 15th Trial Transcript, Appellee's ER, Tab 33, pp. 1654-1655).  The bankruptcy court later

confirmed that the certified transcripts were admitted as testimony of the defendants. (Appellee's ER, Tab 33, pp. 1812-1813).

## V.     THE TRUSTEE'S OPENING BRIEF CONTAINED A PROPER DISCUSSION REGARDING THE STANDARD OF REVIEW

Morgan mischaracterizes the Trustee's statement of the various standards of review applicable to this case, insinuating that the Trustee's brief contained no specificity at all.  However, it is clear from the opening brief which standard of review apply to the various issues raised by the Trustee in her brief.  To the extent that the brief addresses Morgan's contentions that the Court erred in finding that she had breached her fiduciary duty, that would be a finding of fact reviewed for clear error, as conceded by Morgan in her opening brief.  To the extent that the bankruptcy court applied the wrong law on damages when calculating the damages for Morgan's breach, then that determination is a legal one and should be reviewed de novo, as explained in the standard of review section of the Trustee's brief. Similarly, the Trustee plainly explained that the issue of whether federal or state law on post-judgment interest applies is reviewed de novo.  With respect to the issue of the whether the bankruptcy court erred in striking the declaration of the Trustee's expert and precluding his testimony at trial, the Trustee's brief plainly stated that the ruling is reviewed for an abuse of discretion.

The Trustee's brief fulfilled the requirements regarding the standard of review and any argument to the contrary is without merit.

## VI.   <u>MORGAN'S REQUEST TO STRIKE NUMEROUS EXHIBITS IS WITHOUT JUSTIFICATION AND SHOULD BE DENIED</u>

In her brief, Morgan asks this Court to strike a number of exhibits, arguing that the Trustee has not established through citations to the record that the exhibits were actually admitted into evidence.  However, as the Trustee explained in her reply brief filed in connection with the Shelton appeal, this is not the standard. Federal Rule of Bankruptcy Procedure 8014, which governs appellate briefs in bankruptcy appeals, requires that the brief contain "citations to the authorities and parts of the record on which appellant relies."  Fed. R. Bankr. Proc. 8014(a)(8). Where an appellant intends to argue on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all relevant testimony and copies of all relevant exhibits.  The Trustee fully complied with these rules.  The Trustee did not anticipate an argument on appeal contesting the admission of the trial exhibits. Exhibits that were attached to declarations were not formally admitted by the bankruptcy court until each witness was done testifying.  Citing to each location in the transcript where an exhibit was actually admitted would be cumbersome for

both the Trustee and for this Court.  Further, the Trustee has found no authority for Ms. Morgan's argument.  Indeed, the rules that govern appeals to the Ninth Circuit seem to indicate that the Trustee should not be required to take the extra step of including a citation to the transcript where each exhibit cited to or relied on in the brief was actually admitted by the bankruptcy court.  Federal Rule of Appellate Procedure 28 requires appropriate references to the record under Rule 28(e) which, in turn, provides that "[a] party referring to evidence whose admissibility is in controversy must cite the pages of the appendix or of the transcript at which the evidence was identified, offered, and received or rejected."  Fed. R. App. Proc. 28(e).

Here, the Trustee had no reason to believe that Morgan would question whether the trial exhibits on which the Trustee relies were admitted or not.  In fact, setting aside the issue with three particular exhibits, Morgan does not actually argue that the remainder of the trial exhibits were not admitted by the bankruptcy court.  Instead, she faults the Trustee for not pointing to the portions of the trial transcripts that would reflect that they were admitted.  That is not the standard, and Morgan's request that the trial exhibits cited by the Trustee in her brief and included in the excerpts of record should be stricken should be denied.

## VII.   THE BANKRUPTCY COURT DID NOT ERR IN FINDING THAT MORGAN HAD NO ENFORCEABLE CONTRACT, AS ARGUED BY KURTZ IN HER TRIAL BRIEF AND PROPERLY DETERMINED BY THE BANKRUPTCY COURT

The bankruptcy court considered the credibility of evidence submitted by the various parties to conclude that Morgan had no enforceable contract.  Various meeting minutes as well as testimony offered by multiple board members were offered on the subject.  Specifically, multiple board members testified that they did not vote to approve giving Morgan a contract or a deed of trust.  Board member Herring stated,

> Q.     Did you ever vote to approve the board giving Jennifer Morgan a note – promissory note in the amount of a hundred thousand dollars?
> A.     No, don't recall that.
> Q.     Did you ever vote to approve the board giving Jennifer Morgan a deed of trust to secure a hundred-thousand-dollar note in the amount of –
> A.     Don't recall that.
> …
> Q.     Did you ever vote to approve Jennifer Morgan's salary?
> A.     Don't recall that.

(Appellee's ER, Tab 32, pp. 1537-1538).   Board member Duncan stated, "I deny that I voted to approve giving Jennifer Morgan an employment contract or to pay her a salary greater than $800.00 per week… I deny that I voted to approve giving Jennifer Morgan a promissory note and deed of trust in the amount of $100,000 for

back pay or for any other purpose." (Appellee's ER, Tab 34, p. 1844).  Board member Genovese stated, "I did not sign an employment contract for Morgan and I do not recall ever seeing an employment contract.  I did not, and the Board did not, vote to give Morgan a security interest against the Club's property…" (Appellee's ER, Tab 16, p. 750).  Their trial testimony corroborated their trial declarations, which were admitted into evidence.  (February 15[th] Trial Transcript, Tab 33, p. 1756, ll. 2-11, p. 1758, l. 25 – p. 1759, l. 8; February 16[th] Trial Transcript, Tab 47, p. 2327, ll. 12-15, p. 2328, ll. 10-12, p. 2372, ll. 3-5).  Board members Wallace and Van Tassell provided no testimony on these issues (Wallace's Trial Declaration, Appellee's ER, Tab 46).  Morgan and Shelton admitted they did not vote on the issue because of conflict.  (Morgan's Deposition Testimony, Appellee's ER, Tab 43, pp. 2000-2001;  Shelton's Deposition Testimony, Appellee's ER, Tab 44, p. 2145, ll. 12-20).  Thus, the majority of disinterested board members (three out of five) testified under oath that they did not approve Morgan' contract or the deed of trust against the Property.  The bankruptcy court had an opportunity to gauge the board members' veracity when they were cross-examined at trial.

After considering the veracity of the difference sources of information, the bankruptcy court determined that there was no enforceable contract.  The bankruptcy court stated at the hearing on May 17, 2017, "… the one thing that the testimony is clear, that – for me anyway, that there was no board approval of the

contract" (Tab 72, p. 3712).

When factual findings are based on determinations regarding the credibility of witnesses, great deference is given to the bankruptcy court's findings, because the bankruptcy court as the trial of fact, had the opportunity to note variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said. *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010) (*citing U.S. v. Hinkson*, 585 F.3d 1247, 1261-62 & n. 21 (9th Cir. 2009).

Here, the bankruptcy court believed the credibility of the witnesses in determining that Morgan had no enforceable contract. This factual determination should be given great deference and upheld.

As addressed in Section IX.A.2. of the Trustee's opening brief filed on October 13, 2017, there is no validity to Morgan's argument that the Trustee's unverified complaint filed on information and belief and exhibits that were attached but not authenticated as true and correct constitute judicial admission. The bankruptcy court correctly rejected Morgan's judicial admission argument at trial and its determination was not clear error.

-11-

## VIII.  WHETHER MORGAN RETURNED $20,000 TO THE ESTATE IS NOT RELEVANT TO THE ISSUE OF WHETHER THE BANKRUPTCY COURT APPLIED THE CORRECT LAW IN CALCULATING DAMAGES

The bankruptcy court looked at the amount Morgan received to determine damages for Morgan's breach of fiduciary duties to the Club.  As set forth in section IX.B. of the Trustee's brief, the bankruptcy court erred as a matter of law in analyzing damages by calculating how much Morgan received rather than the harm Morgan's actions caused to the Club.

Whether Morgan returned a portion of her ill-gotten gains or not is irrelevant to the injury the Club suffered by Morgan causing the Club to incur the Scapa Loan without any board authorization, a loan that the Club could not afford and that led the Club to seek bankruptcy protection in the underlying bankruptcy case.

## IX.  THE BANKRUPTCY COURT CORRECTLY FOUND THAT MORGAN CONVERTED $6,400 OF FUNDS BELONGING TO THE ESTATE BASED ON HER OWN TESTIMONY

The bankruptcy court did not err in concluding that Morgan converted $6,400 of rent money that belonged to the Club.  It is undisputed that the rent money was the Club's property and an asset of the Club's estate.  It is undisputed

that Morgan took the money after the Club filed its bankruptcy case.

Morgan relies upon section 1107 of the Bankruptcy Code to support her position.  However, section 1107 cannot be read in isolation.  While a debtor-in-possession does have the rights and power and duties of a trustee, such rights are not unfettered.  The Bankruptcy Code and Bankruptcy Rules impose various limits on trustees (and therefore, debtors-in-possession), including section 363 of the Bankruptcy Code, which states, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b).  Here, it is undisputed that Morgan took the rent payment without any notice, hearing, or court order.  Moreover, Local Bankruptcy Rule 2014-1 provides that "[n]o compensation or other remuneration may be paid from assets of the estate to a debtor's owners, partners, officers, directors, shareholder, or relatives of insiders … from the time of the filing of the petition until the confirmation of the a plan nor may approved compensation be increased unless the debtor serves a Notice of Setting/Increasing Insider Compensation ("Notice") in accordance with the procedures adopted by the United States trustee pursuant to this rule."  Local Bankruptcy Rule 2014-1(a)(1).  Again, it is undisputed that neither the Club nor Morgan served such a notice before Morgan took the rent money.

Having failed to give proper notice under either Local Bankruptcy Rule

2014-1 or section 363(b) of the Bankruptcy Code, the bankruptcy court did not err in concluding that Morgan's exercise of dominion over the rent payment of $6,400 belonging to the Club and the Club's bankruptcy estate was wrongful and the resulting damages for conversion was $6,400.

## X.   THE BANKRUPTCY COURT CORRECTLY FOUND THAT MORGAN BREACHED HER FIDUCIARY DUTY BUT ERRED IN CALCULATING DAMAGES BECAUSE IT APPLIED THE WRONG LAW

Morgan makes much of the Trustee's statement of issues, which attempted to clearly identify the issues being responded to in connection with Morgan's appeal and those being raised by the Trustee in her cross-appeal.  Given that Morgan's appeal challenged the bankruptcy court's conclusion that she breached her fiduciary duty, the first issue being address in the Trustee's opening brief was whether, in fact, it erred.  The Trustee believes that the bankruptcy court did not err in that regard, as is evident from a reading of the Trustee's brief.

The Trustee has not misstated the bankruptcy court's findings.  Although the transcript is not a model of clarify, it is apparent from a reading of the transcript that the bankruptcy court found that there was no board approval of any employment contract for Morgan and no board approval of the Scapa Loan that led

to its finding of breach.  (Appellee's ER 72, pp. 3712, 3718).  Specifically the bankruptcy court found as follows:  "But as far as, as far as the loan, that's – the Scapa loan, that I am satisfied that at the end of the day there wasn't the board approval. . . . But I still think that as far as the board, there was a need but not for that amount, not at that time."  (Appellee's ER 72, Transcript (May 17, 2017) at 3708, 3710).  The reason that the bankruptcy court focused on the amounts actually paid to Morgan, rather than the amount of the Scapa Loan is because the bankruptcy court misapplied the law on damages, focusing on what the defendant received and not on the harm that she caused.  Once the bankruptcy court utilized the incorrect damages standard, as a matter of law, it the proceeded to make similarly erroneous findings.

## XI.   THE BANKRUPTCY COURT SHOULD BE INSTRUCTED TO RECALCULATE DAMAGES, TAKING INTO CONSIDERATION THE AMOUNT OF HARM CAUSED BY THE BREACHES OF FIDUCIARY DUTY AND NOT THE AMOUNT RECEIVED BY MORGAN

The Trustee has not abandoned or changed her theory of damages resulting from the breaches of fiduciary duty that occurred in this case.  Instead, in her opening brief, the Trustee suggests that on remand, the bankruptcy court should

enter a judgment in the amount of harm caused, and not on what was received.  If it does that, it will conclude that the damages are at least equal to the amount of the Scapa Loan that will need to be paid as a result of the Club's confirmed plan.  The damages from the Scapa Loan was also a part of the calculation of damages included in the trial testimony of Mr. Don T. Fife, CPA, which the Trustee contends the bankruptcy court erred in striking.  It is not moot as had it been admitted and considered, it could have prevented the bankruptcy court from committing the clear errors that occurred.

There was ample evidence at trial that the unapproved Scapa Loan caused the Club to file the underlying bankruptcy case.  For example, at the meeting of creditors, Morgan testified under oath that the Scapa had a foreclosure sale set and the bankruptcy was filed to stay the foreclosure sale.  (Appellee's ER, Tab 60, p. 3022-3023).  The bankruptcy court, when it erred in applying the wrong standard for damages, looked only at what Morgan received, and not the harm the Club suffered from the unauthorized Scapa Loan.  As a result, there were a number of factual errors that occurred once the bankruptcy court focus was misdirected. This erroneous application of damages law and the subsequent errors resulting from it is the crux of Trustee's cross-appeal.

-16-

## XII.   THE TRUSTEE REQUESTED PRE-JUDGMENT INTEREST AT THE TRIAL COURT LEVEL AND IT IS NOT WAIVED

The Trustee requested pre-judgment interest before and at trial, contrary to Morgan's contention.  (First Amended Complaint, Appellant's App., Exh. 1, at p. 49, ll. 6-7; Trustee's Trial Brief, Tab 82, at p. 4346, l. 22 and p. 4359, l. 20; Trustee's Post-Trial Brief, Tab 81, pp. 4314- 4315).   It has not been waived nor is it being raised for the first time on appeal.

## XIII.   THE TRUSTEE DID OBTAIN THE BANKRUPTCY COURT'S AUTHORIZATION TO EMPLOY THE FIRM TO REPRESENT HER IN THE UNDERLYING LITIGATION AS WELL AS OTHER MATTERS ARISING FROM THE UNDERLYING BANKRUPTCY CASE

Morgan contends that the Trustee's briefs should be stricken because she did not obtain the bankruptcy court's authority to retain her counsel.  This is untrue. Attached to the Appellant's Excerpts of Record as Tab 83 is a copy of the bankruptcy court's order authorizing the Trustee's retention of her counsel of record.

## XIV.   CONCLUSION

The crux of the Trustee's cross-appeal is the bankruptcy court's legal error in

applying the incorrect damages standard.  Specifically, the bankruptcy court viewed damages from the perspective of how much Morgan received, rather than quantifying the harm suffered by the Club.  This erroneous application of the law, which is to be reviewed de novo, led to a series of other factual errors that should be corrected on remand if the bankruptcy court were to apply the proper damages inquiry.  Contrary to Morgan's contention, however, the Trustee has not changed or abandoned any of her damages theories.  In order to illustrate the error committed by the bankruptcy court, the Trustee has simply tried to  provide examples of what the damages should have been had the bankruptcy court quantified harm from the Club's perspective and not from the amounts received by Morgan.

Morgan makes a number of other arguments which are false, unfounded or misleading, in an effort to obscure the real issue, the quantification of damages to the Club as a result of Morgan causing the Club to obtain the Scapa Loan, which she knew the Club did not authorize and could not repay, for the benefit of herself and other insiders.  The bankruptcy court erred on its application of damages and its judgment should be reversed and remanded to quantify damages from the

perspective of the Club, and not by the amount received by Morgan.


RESPECTFULLY SUBMITTED this 22nd day of November, 2017.


/s/ *Lei Lei Wang Ekvall*

SMILEY WANG-EKVALL, LLP
Lei Lei Wang Ekvall, State Bar No. 163047
Kyra E. Andrassy, State Bar No. 207959
Robert S. Marticello, State Bar No. 244256
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:  714 445-1000
Facsimile:  714 445-1002
Email:  lekvall@swelawfirm.com
        kandrassy@swelawfirm.com
        rmarticello@swelawfirm.com
Attorneys for Appellant, Heide Kurtz. Plan Trustee

## **CERTIFICATE OF COMPLIANCE**

(Federal Rule of Bankruptcy Procedure 8015(a)(7))

I, Lei Lei Wang Ekvall, certify that:

Pursuant to Federal Rule of Bankruptcy Procedure 8015(a)(7), the foregoing brief, including the tables, contains 4,735 words, according to the word count performed by Microsoft Word, and therefore, it meets the requirements of Rule 8016(d)(2)(C).

RESPECTFULLY SUBMITTED this 22nd day of November, 2017.

/s/ *Lei Lei Wang Ekvall*
SMILEY WANG-EKVALL, LLP
Lei Lei Wang Ekvall, State Bar No. 163047
Kyra E. Andrassy, State Bar No. 207959
Robert S. Marticello, State Bar No. 244256
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:  714 445-1000
Facsimile:  714 445-1002
Email:  lekvall@swelawfirm.com
          kandrassy@swelawfirm.com
          rmarticello@swelawfirm.com
Attorneys for Appellant, Heide Kurtz. Plan Trustee

2727368.1

-20-

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Orange, State of California.  My business address is 3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626.

On November 22, 2017, I served true copies of the following document(s) described as **REPLY BRIEF OF APPELLEE AND CROSS-APPELLANT** on the interested parties in this action as follows:

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 22, 2017, at Costa Mesa, California.


*/s/ Heather Davis*
Heather Davis